## FELLOWS *v.* BROWN.

The obligation to maintain gates, on a road laid out for the accommodation of individuals, is personal merely to the applicant for the road, and does not pass to the grantee of land owned by the person making such application ; and such grantee is, therefore, not liable for damages caused to the plaintiff's land, by reason of not maintaining such gates.

THIS is an action on the case, against one to whom the applicant for a highway, laid out subject to gates and for the benefit of individuals, had conveyed the land through which the road passed, brought to recover damages for injuries by cattle to the plaintiff's land, caused by not maintaining the gates.

The facts are stated in the case of *Proctor* v. *Andover.*

*Quimbie*, for the plaintiff.

*Shirley*, for the defendant.

BELLOWS, J.  By the express provisions of the statute, the persons for whose benefit a road is laid out subject to gates, are bound to maintain them at their own expense, as the selectmen shall order; and this implies not only that such gates shall be maintained, but be kept shut ; and so is the return of the selectmen.  It is the duty, then, of such persons to maintain such gates and keep them shut, and, in case of neglect, they are liable to the land-owner for the damages sustained thereby.  This is clearly the doctrine of *Dean* v. *Sullivan Railroad Co.*, 22 N. H. 316, which was case for not maintaining a sufficient fence by the side of the defendants' railroad track, by reason of which cattle escaped and did damage to the plaintiff's land, and, on demurrer, the declaration was sustained.  A similar doctrine is held in *Cornwall* v. *Sullivan Railroad Co.*, 28 N. H. 161.

The case of *Horn* v. *Atlantic and St. Lawrence Railroad*, 35 N. H. 170, was case for not keeping up fences by the side of the defendants' railroad, through the plaintiff's land, by reason of which his cattle escaped upon the railroad track and were killed; and it was held that the corporation was liable for the omission to perform its duty in respect to the fences. The same doctrine is recognized in *Chapin* v. *Sullivan Railroad Co.*, 39 N. H. 53; and there it is said, by *Fowler*, J., that the corporation would be liable not only for such injury to the cattle, but for the injury they might do to the plaintiff's crops, in an adjoining field, into which they escaped from defects in the defendants' fences. In these cases, the duty to maintain the fences is deduced from the statute provisions; but the liability arising out of that duty is the result of common law principles, which are equally applicable to the case before us. It must be observed, however, that this obligation to maintain fences, and the corresponding liability for damages caused by the neglect, extends only to the case of cattle rightfully in the adjoining close. Therefore, if, by reason of not maintaining the gates, cattle in the close adjoining, which are not rightfully there, escape into the plaintiff's close and do damage, the person by whose fault the gate was left open would not be liable. But if rightfully in such adjoining close, he would be liable.

Another question might arise, and that is, how far the liability would extend, if it appeared that the gates had been wholly removed, or become decayed, ruinous and useless, and this had been long known to the plaintiff. Upon this point, however, we do not give any opinion, as the question does not necessarily arise in this case.

Upon these views we are brought to the conclusion that the persons, Pierce and Brown, for whose benefit the road was laid out, had they retained their property,

would have been liable, in the manner suggested, for the neglect of .their duty.

The remaining question is, whether their grantee of the estate which was accommodated by this road, succeeds to their duties and liabilities in respect to these gates. If the right to use the road were appurtenant to the land, and passed with it, it would be reasonable that the duty should go with it. But the statute imposes the duty upon the persons for whose benefit the road is laid, not upon the owner of the estate accommodated; and for this purpose the law would not look beyond the application to determine where the duty lay, inasmuch as the persons most benefited might not be those who applied. Beside, all persons having occasion may use the road, as we have already decided in *Proctor* v. *Andover*, and the grantees of the original applicant acquire no especial right, except so far as they may have more occasion to use it. So the applicant may convey a part of the land particularly benefited, or divide the whole among several grantees, or he may retain the business for which he wanted the way, and sell the land through which it passed. If it be said that the original applicant may assign all the land and business for which the road was laid, and thus have no occasion to use it, and that it would then be unreasonable to continue to impose this duty upon him, the answer is, that such is the provision of the statute, and he should make stipulations with his grantee to discharge the duty, or if the road is no longer wanted, cause it to be discontinued. On the other hand, unless the duty is a charge upon the land, and not merely the person, the objection to holding the grantee would be, we think, insuperable; and for the reasons already suggested, the duty must be deemed a personal charge, both because the terms of the statute and the nature of the case indicate it. There is nothing, indeed, in the nature of the case that makes it necessary that the applicant should be the

owner of any land whatever; but it may be laid to accommodate a business not connected with the ownership of land.

There must, therefore, be

*Judgment for the defendant.*